```
IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA
```

| | |
|---|---|
| Victor Altamirano, | ) |
| Petitioner, | ) CIV 14-00147 PHX NVW (MEA) |
| v. | ) REPORT AND RECOMMENDATION |
| Charles L. Ryan, et al., | ) |
| Respondents. | ) |

**TO THE HONORABLE NEIL V. WAKE:**

Petitioner, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on or about January 27, 2014. Respondents filed a Limited Answer to First Amended Petition for Writ of Habeas Corpus ("Answer") (Doc. 9) on May 9, 2014. Petitioner filed a reply to the answer to his petition on June 5, 2014.  See Doc. 10.

**I Procedural History**

A grand jury indictment returned April 4, 2007, charged Petitioner with two counts of aggravated driving or physical control of a vehicle while under the influence of intoxicating liquor or drugs, in violation of Arizona Revised Statutes §28-1383.  See Answer, Exh. A.  Respondents aver:

On May 10, 2007, the Public Defender's Office, which had been appointed to represent Defendant, moved to withdraw from the representation because of a conflict of interest with a current client. That motion was granted and the Office of the Public Defense Services was appointed to represent Defendant. But at Defendant's initial pretrial conference on May 31, 2007, no attorney appeared on Defendant's behalf. Defendant moved for dismissal based on the fact that he did not have legal representation. The court denied Defendant's motion and ordered that the Public Defender's Office verify its withdrawal and that the Office of Public Defense Services assign new counsel.

On June 11, 2007, the court on its own motion called the case for a hearing. Nobody had contacted the State regarding Defendant's case and the commissioner presiding over the case told Defendant, who was present at the hearing, that he had contacted the office of the Legal Advocate and the Office of Defense Indigent Services but those offices seemed unaware of Defendant's existence. Defendant again moved for dismissal based on the fact that he did not have legal representation, and that motion as denied. The commissioner stated on the record that his staff would contact the heads of all indigent defense services, and the prosecutor stated that his supervisor could also make calls. By July 23, 2007, Defendant was represented by counsel.
***
On August 10, 2007, a hearing was held at which Defendant moved to represent himself. Defendant's motion was denied and defense counsel was affirmed as the attorney of record.

Trial was scheduled to begin on November 7, 2007. On that date, before jury selection commenced, defense counsel presented argument on Defendant's motions to dismiss on ineffective assistance of counsel and speedy trial grounds. Both motions were denied. Defense counsel then informed the court that Defendant had told counsel that he wanted to plead guilty except insane. That request prompted defense counsel to move for a determination of Defendant's competency pursuant to Ariz. R. Crim. P. 11. The court did not immediately rule on the motion, but

-2-

instead vacated the trial and reset it to the next day, November 8, 2007.
  [Defendant's competency had earlier been determined through Ariz. R. Crim. P. 11 proceedings.]
  On November 8, 2007, the court granted defense counsel's motion for a determination of competency. In addition, the court denied Defendant's written motions to waive his right to counsel and to change counsel to himself. Trial was vacated and time was excluded until Defendant's competency was determined. On January 8, 2008, the court accepted the parties' written stipulation of Defendant's competency based on the reports of the two doctors appointed to evaluate Defendant, and, accordingly, found Defendant competent. With the exclusion of time, the new last day for trial was January 15, 2008.
  On January 15, 2008, a trial management conference was held. The court excluded additional time in the interest of justice, and the new last day for trial was February 4, 2008. Defendant again moved to represent himself, and his motion was again denied.
  Trial commenced on February 4, 2008. Before voir dire began, an impromptu settlement conference was held at Defendant's request. The court explained the charges and possible sentences, and the terms of the State's plea offer. Asserting that his constitutional rights, especially his right to a speedy trial, had been violated, Defendant rejected the State's plea offer. The court then held an Ariz. R. Evid. 609 hearing on Defendant's four prior felony convictions, which the State had earlier alleged. The court ordered that the prior convictions could be introduced but the State was required to sanitize them.
   Voir dire and trial commenced. At trial, the State presented evidence that on the morning of October 3, 2006, Officer Lillian Molina of the Phoenix Police Department conducted a traffic stop of a vehicle being driven by Defendant because the vehicle had invalid plates. Officer Molina activated the lights on her marked patrol vehicle...
***
 Defendant gave Officer Molina an "old-style" driver's license and told her that his license was revoked. Officer Molina directed Defendant to exit the vehicle. She observed

-3-

that he was experiencing problems with his balance and had bloodshot and watery eyes. Defendant told Officer Molina that he had consumed about ten beers.

Officer Carlos Rodriguez of the Phoenix Police Department responded to the scene. Like Officer Molina, he noticed that Defendant emanated a strong odor of alcohol, had bloodshot and watery eyes, and was experiencing problems with his balance. Officer Rodriguez also noticed that Defendant was sweating profusely. When questioned by Officer Rodriguez, Defendant stated that he had consumed two beers.

Defendant refused to submit to field sobriety tests and was taken to a Department of Public Safety station where, after being advised of the consequences of refusal, he agreed to complete a breath test using an Intoxilyzer 8000. Officer Rodriguez, a certified operator of the Intoxilyzer 8000, followed all required procedures in administering the test and collected two breath samples, about seven minutes apart. The test result for Defendant's first breath sample indicated that he had an alcohol concentration of 0.154, and the result for his second breath sample indicated that he had an alcohol concentration of 0.166. A Department of Public Safety Intoxilyzer 8000 quality assurance specialist testified that based on calibration checks, the machine used to test Defendant was working properly at the relevant time. Another Department of Public Safety quality assurance specialist and forensic alcohol criminalist similarly testified that the machine used to test Defendant was working properly at the relevant time, and also testified that Intoxilyzer 8000 machines contain safeguards that prevent inaccurate results.

The State finally presented evidence that Defendant's driver's license was suspended and revoked at the time he was stopped.

At the close of the State's case in chief, Defendant moved for a judgment of acquittal pursuant to Ariz. R. Crim. P. 20. That motion was denied, and Defendant took the stand over his counsel's advice. After Defendant refused to answer questions on direct examination regarding his prior convictions, citing the Fifth Amendment, the court recessed until the next day. Before Defendant resumed testifying

-4-

> the next morning, the court, outside the presence of the jury, ordered him to not invoke his Fifth Amendment right and warned him that if he did refuse to answer a question, he would be held in contempt of court. Defendant indicated that he understood, and resumed testifying. Defendant testified that on the morning of October 3, 2006, he drank two twenty-four ounce cans of beer, the second of which he "downed" or "guzzled" immediately before driving and at that point his [blood] alcohol concentration would have been below 0.05. Defendant also testified that although he did not have a driver's license, he was eligible to obtain a license but had not paid the required fines or fees.
>   After hearing closing arguments and considering the evidence, the jury found Defendant guilty of two counts of aggravated driving or physical control while under the influence of intoxicating liquor or drugs and guilty of the lesser-included offenses of driving under the influence of intoxicating liquor or drugs. The court entered a judgment notwithstanding the verdict and dismissed the verdicts on the lesser-included offenses on double jeopardy grounds.
>   After a trial on Defendant's prior felony convictions, the court found that Defendant had four prior felony convictions and was on release from prison on community supervision when he committed the current offenses. The court entered judgment on the jury's verdicts and sentenced Defendant to concurrent terms of twelve years of imprisonment for each offense, with credit for 397 days of presentence incarceration.

Id. at 2-7, quoting Exh. B at 3-10 (some internal footnotes and citations omitted).

Petitioner took a timely direct appeal of his convictions and sentences. Petitioner's appointed appellate counsel filed an "Anders" brief, indicating he could find no meritorious issues to raise on Petitioner's behalf. Counsel also asserted issues put forward by Petitioner, i.e., that: 1)

-5-

the trial court improperly denied Petitioner's right to self-represent; 2) the trial court erred by finding Petitioner competent to stand trial but unable to self-represent; 3) the trial court denied Petitioner's constitutional right to due process by conducting hearings in his absence; 4) the trial court erred by not permitting Petitioner to plead guilty except insane to the charges; 5) Petitioner was denied his right to speedy trial; 6) the trial court abused its discretion by continuing Petitioner's trial date and excluding time under Rule 8, Arizona Rules of Criminal Procedure, outside Petitioner's presence; 7) the trial court abused its discretion by excluding Rule 8 time, over Petitioner's objection; and  8) the trial court denied Petitioner his right to counsel and should have dismissed the case.  Id. at 8, citing Exh. B at 12-13. Petitioner filed a supplemental pro per pleading regarding these issues on September 1, 2009.  Id., Exh. J.

In a decision entered December 1, 2009, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. Id., Exh. B.  The court consolidated Petitioner's claims for relief as raising five issues: 1) the right to counsel; 2) the right to self-representation; 3) the right to due process; 4) the right to a speedy trial; and 5) the court's failure to allow Petitioner to plead guilty but insane.  Id., Exh. B at 2.  The court rejected each of the claims on the merits.  Id., Exh. B at 11-18.

Petitioner was sentenced on March 12, 2008. Petitioner filed a notice of post-conviction relief that same day.  Id.,

-6-

Exh. P. On June 17, 2008, Petitioner's appointed post-conviction counsel moved to dismiss the post-conviction proceeding pending the outcome of Petitioner's direct appeal. Id., Exh. Q.

On March 8 and 11, 2010, Petitioner filed a notice of post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure. See id., Exh. S.  The trial court appointed post-conviction counsel to represent Petitioner in his Rule 32 proceedings.  See id., Exhs. U & V.  Petitioner's counsel requested and received numerous extensions of the time allowed to file a petition for post-conviction relief. Id., Exh. W.

On June 6, 2011, Petitioner filed a motion requesting the appointment of new post-conviction counsel. Id., Exh. X. On June 27, 2011, the state trial court ordered Petitioner's counsel to consult with Petitioner, and again extended the time to file a petition. Id., Exh. Y. On July 26, 2011, the state trial court issued an order to show cause to Petitioner's counsel and, on November 3, 2011, the court dismissed Petitioner's action for post-conviction relief for failure to file a petition. Id., Exhs. Z & AA. On January 23, 2012, Petitioner's post-conviction counsel belatedly filed a notice of completion of review, indicating that she found no "tenable issue" to raise in a Rule 32 proceeding. Id., Exh. BB.

> On February 1, 2012, the trial court granted Petitioner 45 days within which to file a pro per petition for post-conviction relief, however, on February 16, 2012, on its own motion, the trial court appointed new post-conviction counsel. (Exhibits CC and DD.) On April 27, 2012, no petition having been filed, the trial court dismissed Petitioner's Rule 32 proceeding. (Exhibit

>   EE.) On May 14, 2012, Petitioner's counsel filed a motion for reconsideration, arguing a misunderstanding in his appointment had prevented him from accessing Petitioner's file. (Exhibit FF.) On May 18, 2012, the trial court granted the motion and reinstated Petitioner's Rule 32 proceeding. (Exhibit GG.)
>   ***
>   Petitioner filed a petition for post-conviction relief on October 29, 2012. (Exhibit II.) The petition raised one issue—that the trial court and defense counsel did not properly explain the plea agreement to Petitioner. (Id. at 4-6.) After seeking and receiving an extension of time (Exhibit JJ), Petitioner filed an affidavit and certification certifying that the petition included all the claims and grounds for relief known to him. (Exhibit KK.)

Id. at 9-10.

In a decision entered January 30, 2013, the state trial court dismissed Petitioner's post-conviction petition because "no colorable claim ha[d] been raised." Id., Exh. NN.

Petitioner filed his federal habeas petition on March 27, 2014. In his federal habeas petition, Petitioner contends: 1) he was denied his right to waive counsel; 2) he was denied his right to the effective assistance of counsel at "critical stages" of his criminal proceedings; 3) he was denied his right to a speedy trial; 4) he was denied his right to "due process;" and 5) the state trial court erred in denying his petition for post-conviction relief.

Respondents assert that Petitioner's habeas action is not timely.

>   The AEDPA limitations period would have thus commenced on December 31, 2010, and absent

-8-

>any equitable tolling, he would have been required to file the instant federal petition on or before January 3, 2011 (because January 1, 2011, is a holiday and fell on a Saturday). See 28 U.S.C. § 2244(d)(1)(A). Petitioner did not file his habeas petition until March 27, 2014.

**II Analysis**

**Statute of limitations**

The petition seeking a writ of habeas corpus is barred by the applicable statute of limitations found in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The AEDPA imposed a one-year statute of limitations on state prisoners seeking federal habeas relief from their state convictions. See, e.g., Espinoza Matthews v. California, 432 F.3d 1021, 1025 (9th Cir. 2005); Lott v. Mueller, 304 F.3d 918, 920 (9th Cir. 2002). The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The AEDPA provides that a petitioner is entitled to tolling of the statute of limitations during the pendency of a "properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2). See also Artuz v. Bennet, 531 U.S. 4, 8, 121 S. Ct. 361, 363-64 (2000); Harris v. Carter, 515 F.3d 1051, 1053 (9th Cir. 2008).

Petitioner did not petition the Arizona Supreme Court for review of the Arizona Court of Appeals' decision affirming his convictions and sentences. Therefore, Petitioner's state

court convictions and sentences became final thirty days after the Court of Appeals affirmed the convictions on December 1, 2009. Petitioner's convictions became final when the time expired for seeking review of the appellate court's decision by the Arizona Supreme Court, i.e., on December 31, 2009, thirty days after the appellate court denied relief. Accordingly, the one-year statute of limitations began to run on January 2, 2010, and expired on January 1, 2011, unless statutorily or equitably tolled.

The statute of limitations regarding Petitioner's federal habeas action ran for approximately two months and one week, from January 2, 2010, until March 8, 2010, when it was statutorily tolled by Petitioner's docketing of a state action for post-conviction relief.

Petitioner filed a state action for post-conviction relief on March 8, 2010, which tolled the statute of limitations on his federal habeas action. The statute of limitations was tolled until January 30, 2013, when the state trial court denied Rule 32 relief and until February 28, 2013, when the time expired for seeking review of this decision by the Arizona Court of Appeals. The remaining nine months and three weeks of the statute of limitations regarding the federal habeas action then began to run on March 1, 2013, and expired on December 22, 2014.

Accordingly, Petitioner's habeas action, filed January 27, 2014, was filed approximately one month after the statute of limitations expired.

The one-year statute of limitations for filing a habeas petition may be equitably tolled if extraordinary circumstances beyond a prisoner's control prevent the prisoner from filing on time. See Holland v. Florida, 130 S. Ct. 2549, 2554, 2562 (2010); Bills v. Clark, 628 F.3d 1092, 1096-97 (9th Cir. 2010). A petitioner seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814-15 (2005). See also Ford v. Gonzalez, 683 F.3d 1230, 1237 (9th Cir. 2012); Porter v. Ollison, 620 F.3d 952, 959 (9th Cir. 2010); Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011-14 (9th Cir. 2009). In Holland the Supreme Court eschewed a "mechanical rule" for determining extraordinary circumstances, while endorsing a flexible, "case-by-case" approach, drawing "upon decisions made in other similar cases for guidance." Bills, 628 F.3d at 1096-97.

The Ninth Circuit Court of Appeals has determined equitable tolling of the filing deadline for a federal habeas petition is available only if extraordinary circumstances beyond the petitioner's control make it impossible to file a petition on time. See Chaffer v. Prosper, 592 F.3d 1046, 1048-49 (9th Cir. 2010); Porter, 620 F.3d at 959; Waldron-Ramsey, 556 F.3d at 1011-14 & n.4; Harris v. Carter, 515 F.3d 1051, 1054-55 & n.4 (9th Cir. 2008); Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2003), modified on other grounds by 447 F.3d 1165 (9th Cir. 2006). Equitable tolling is only appropriate when external

-11-

forces, rather than a petitioner's lack of diligence, account for the failure to file a timely habeas action. See Chaffer, 592 F.3d at 1048-49; Waldron-Ramsey, 556 F.3d at 1011; Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). Equitable tolling is also available if the petitioner establishes their actual innocence of the crimes of conviction. See Lee v. Lampert, 653 F.3d 929, 933-34 (9th Cir. 2011).

Equitable tolling is to be rarely granted. See, e.g., Waldron-Ramsey, 556 F.3d at 1011; Jones v. Hulick, 449 F.3d 784, 789 (7th Cir. 2006); Stead v. Head, 219 F.2d 1298, 1300 (11th Cir. 2000). Equitable tolling is inappropriate in most cases and "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002). Petitioner must show that "the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time." Porter, 620 F.3d at 959. It is Petitioner's burden to establish that equitable tolling is warranted in his case. See, e.g., Porter, 620 F.3d at 959; Espinoza Matthews v. California, 432 F.3d 1021, 1026 (9th Cir. 2004); Gaston, 417 F.3d at 1034.

Petitioner contends that the delays in timely filing his habeas action were caused by attorneys and the courts, and that he has been diligent in pursuing his remedies. Petitioner notes Respondents' calculation regarding his federal habeas action does not provide for tolling during the pendency of his state post-conviction action.

Petitioner has not stated an adequate basis for equitable tolling of the statute of limitations. Compare Holland, 130 S. Ct. at 2564; Porter, 620 F.3d at 961 (noting the circumstances of cases determined before and after Holland). A petitioner's pro se status, ignorance of the law, and lack of legal representation during the applicable filing period do not constitute circumstances justifying equitable tolling because such circumstances are not "extraordinary." See, e.g., Chaffer, 592 F.3d at 1048-49; Waldron-Ramsey, 556 F.3d at 1011-14; Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006); Shoemate v. Norris, 390 F.3d 595, 598 (8th Cir. 2004). The vicissitudes of prison life are not "extraordinary" circumstances that make it impossible to file a timely habeas petition. See, e.g., Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009).

The Ninth Circuit Court of Appeals has held that a petitioner is entitled to tolling of the statute of limitations if they can establish that they are actually innocent of the crimes of conviction. See Lee, 653 F.3d at 934. The petitioner must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 938. Petitioner has not made a showing of any new evidence. Accordingly, Petitioner is not entitled to tolling of the statute of limitations based on the theory of actual innocence.

Because the habeas action was not filed within the statute of limitations and Petitioner has not stated a proper basis for equitable tolling of the statute of limitations, the

Court need not consider the merits of his claims.

**III Conclusion**

Petitioner did not file the habeas petition within one year of the date his state conviction became final. Petitioner has not established that he is entitled to equitable tolling of the statute of limitations.

**IT IS THEREFORE RECOMMENDED that** Mr. Altamirano's' Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration

-14-

of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The undersigned recommends that, should the Report and Recommendation be adopted and, should Petitioner seek a certificate of appealability, a certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C.A § 2253(c)(2).

DATED this 13th day of June, 2014.

_____
Mark E. Aspey
United States Magistrate Judge